Rapallo, J.
The petitioner in this matter moves for a reargument of the appeal therein, alleging as one ground for such motion, that since the- decision of this court on *331 such appeal, it has obtained from the general term of the supreme court an order to show cause why the report of the commissioners appointed by it should not be remanded to them for further hearing, which order0 to show cause is now pending, and that, in order to comply with the opinion of this court, the petitioner has taken proceedings for the amendment of its articles of association, by inserting therein an amended article X, in relation to the forfeiture ■of its rights and franchises to the supervisors of the county, and that to further comply with such opinion, the petitioner has, by resolution of its board of directors, requested the president of the board of commissioners appointed by the mayor, who framed the said articles of association, to call a meeting of said commissioners for the purpose of correcting the defects and supplying the omissions pointed out in said opinion. That the president of said board of commissioners had reconvened them, and they have further determined as to the plans for the construction of the petitioner’s railway, and have amended them in the particulars mentioned in the opinion, and the petitioner is willing to do such other things as may conform to the judgment of this court.
The petitioner claims that the functions of the mayor’s commission have not expired, but were continued, and were still existing at the time of this amendment, said commission having at its meeting in June, 1884, reserved the right to reconvene at the call of its president; that the times fixed by the rapid transit act for the performance of the several acts to be performed by the mayor’s commission, were not mandatory, but merely directory; that under the circumstances of this case they could be performed at the time of the amendment, and that the amendment of the articles of association was authorized by chapter 135 of the Laws of 1870, which empowered corporations formed under general laws to amend their certificates of incorporation in case of any informality therein.
Many grave objections are suggested to the validity of these proceedings to amend; but they cannot be considered on this motion. Even if the proceedings to amend were effectual, they would not afford ground for a reargument of the appeal. The jurisdiction of this court is confined to a review of determinations actually made by the supreme court, and this review must be had upon the same papers which were before the general term. We cannot rehear the matter upon a different state of facts from those upon which the general term acted, for that would be an exercise of original jurisdiction on the new state of facts presented, and not a review of the actual determination of the court below.
*332 If a new state of facts, giving rise' to new questions and obviating the legal objections which existed to the application originally made by the petitioner, is now presented (a question which is not now properly before us, and upon which, therefore, we do not express any opinion), the order made by this court, affirming the order of the general term denying the application of the petitioner, will be no obstacle to a rehearing of the matter at the general term on the alleged new state of facts, should that tribunal see fit to grant such a rehearing, or to a new application based upon new facts (Riggs v. Pursell, 74 N. Y., 370), and on such new hearing, or new application, if the legislation of 1884 has not precluded the petitioner from proceeding under the rapid transit act to obtain authority,through the action of the mayor’s commission since 1884 to construct a surface road, it will be open to the supreme court to exercise its discretionary power over the whole matter, or to pass, as it did in the first instance, only on questions of law.
We, however, cannot make any modification of our decision, or any order in the matter based upon the alleged change of facts, or alleged amendment of the proceedings of the mayor’s commission and of the articles of association.
Some other grounds, however, are urged in support of this application for a reargument, which will be briefly noticed.
First. It is alleged that the articles of association of the petitioner were prepared upon the model of the articles of association of the Manhattan Elevated Railway Company, which company is said to have been organized under the rapid transit act. On this point it is sufficient to say that the articles of association of the Manhattan Elevated Railway Company have never been before this court, nor have we any judicial knowledge of their provisions, or their existence, unless they came incidentally in question in The Matter of the Gilbert Elevated Railway Company (71 N. Y., 361). They are not even mentioned, either in the arguments of counsel, or in the opinion of the court, in that case. None of the questions involved in the decision of this case were discussed in that case, nor was the attention of the court called to any of them, if they existed. The sufficiency of those articles has not been litigated or considered in any case which has been before this court.
Secondly. It is claimed that from the opinion in this case the court appears to have overlooked its decision in The Matter of the New York Elevated Railroad Company (70 N. Y., 327). That case was fresh in the memory of the court, several of the judges who participated in its decision, including the judge who delivered the opinion, having con *333 curred in the decision of the present case, and we are unable to find that any point decided or discussed in that case conflicts with the decision in the present one in any particular. In so far as the validity of the organization of the present petitioner is concerned, it is impossible that there should be any such conflict, because the New York Elevated Railroad Company was not organized under the rapid transit act. Chapter 606 of the Laws of 1815.
The New York Elevated Railroad Company was originally incorporated under the general railroad law of 1850, and the supplementary act of 1866. It was recognized as an existing corporation by chapter 595 of the Laws of 1815, entitled “An act to authorize and require the New York Railroad Company to continue and complete its railroad in the city of New York, and to regulate the construction, operation and management thereof,”
That act recited the corporation of the Elevated Railway Company under the general law of 1850; that it had acquired by purchase, under a foreclosure of a mortgage, the powers and franchises of the West Side and Yonkers Patent Railway Company, and was by the act last referred to confirmed in the possession and enjoyment of said rights and franchises; and the powers of certain commissioners previously appointed were extended to it; and prior to the passage of the rapid transit act it had constructed and was actually operating an elevated steam railway on a portion of its route.
After the passage of the rapid transit act it proceeded under section 36 of that act to make certain connections and additions to its route, and no question could arise in the case except with respect to those connections. But even as to those, nothing was discussed in the opinion or decided which touches the present case.
The only point claimed in the papers on the present motion to have had the effect is that while the mayor’s commissioners had given to the Elevated Railroad Company authority to elect between several specified plans for the construction of a certain portion of the connections, the mayor’s commissioners had imposed as a certain condition that the company be confined to 'one of the specified plans unless the property owners should consent, and the point made was as to the action of the mayor’s commissioners in giving the right of election, but as to that of the supreme court commission, which it was said exceeded its powers in imposing the condition which restricted the company to one only of the plans, and all that this court said upon the. subject was that that complaint would come more properly from the railroad company than from the property owners. No question as to the incorporation of the *334 Elevated Railroad Company was before the court, it being fully recognized as an existing corporation. The same remarks apply to the case of The Gilbert Elevated Railway Company (70 N. Y., 351). That company was organized as an elevated road before the rapid transit act of 1875, under acts passed in 1872, 1873 and 1874, and was an existing corporation at the time of the passage of the rapid transit act.
The proceeding which came before this court was had under section 36 of the rapid transit act, which authorized . any existing corporation which had not forfeited its charter or failed to comply with its provisions, whose route or routes coincided with those determined upon by the commissioners appointed under the rapid transit act, to construct and operate its railway thereon upon fulfillment of' the requirements of the rapid transit act. The question mainly considered was the constitutionality of section 36, which was contested as violative of section 18 of article 3. of the constitution.
These cases were not overlooked, but we found nothing in them in conflict with the conclusions at which we were-constrained to arrive in the present case.
Third. It is claimed that this court overlooked the authorities cited on the appellant’s points, to the effect that a defect in the articles of association or in affidavits annexed thereto is not fatal to the existence of . a corporation or its-faculty to acquire franchises, but that the state alone can interpose and take advantage of such defects.
This court did not deem it necessary to comment ■ in its. opinion upon the authorities, for the simple reason that we did not deem them applicable to the case at bar. In order to sustain proceedings by which a body claims to be a corporation, and as such empowered to exercise the right of eminent domain, and under that right to take the property of a citizen, it is not sufficient that it be a corporation de: facto. It must be a corporation de jure. Where it is; sought to take the property of an individual-under powers granted by an act of a legislature to a corporation to be formed in a particular manner therein directed, the consti- ° tutional protection of the rights of private property requires-that the powers granted by the legislature be strictly pursued and all the prescribed conditions be performed. Where: • the power is conferred upon a corporation duly formed, it; ■ wifi not be defeated simply because the corporation has done or omitted some act which may be a cause of forfeiture of its rights and franchises, for it rests with the state to determine whether such forfeiture will be enforced. Judicial proceedings are necessary to enforce such a forfeiture and it may be waived.. That was the point to which the opinion *335 In the Matter of the Brooklyn, etc., R. R. Co. (72 N. Y., 245), cited by the appellant, was directed. It was assumed that this distinction was well understood, and a consideration of the opinion of the court in the present case was devoted to showing that the omissions and defects in the organization of the company were failures to comply with the conditions precedent to the existence of the petitioner as a corporation, and the exercise by it of the right of eminent domain instead of being mere causes of forfeiture of rights acquired. The petitioner further contends on this motion that this court has not pointed out any objections to the plans of so much of the petitioners’ railways as are surface roads, and, therefore, claims that the surface railway should be allowed, even if the others were disallowed.
But the learned counsel overlooks the fact that even if the plans of the surface road were in compliance with the act, that would not authorize a reversal of the general term decision, or authorize a confirmation of the report of the supreme court commissioners. Even supposing the report of the commissioners was not an entirety, and that it should be held equivalent to a consent of property owners as to a part of the routes, and ineffectual as to the others, the objection of the want of the prescribed forfeiture clause applies to all the routes and precludes even a partial confirmation.
Our decision was reached after careful examination and deliberation in view of the large interests involved. But notwithstanding our strong inclination to sustain the rights claimed to have been acquired by the petitioners if it could reasonably be done without disregarding the protection which the law had thrown around the public and private rights affected, we found some of the objections presented and insisted on by the respondents insurmountable.
Our attention has not been called on this motion to any subject which we had overlooked nor to any consideration which should induce us to change our conclusions.
The motion for a reargument or to amend the remittiturshould, therefore, be-denied.