Bissell, J.,
delivered the opinion of the court.
This is a proceeding under the statute which provides a *302 remedy to redress those wrongs which were remediable at the common law by information in the nature of quo warranto. Except probably by original proceedings in the supreme court, no information can now be successfully prosecuted. Chapter 27 of the code has been held to provide a substituted remedy and to repeal all antecedent legislation on this subject. Waterman on Corporations, vol. 2, sec. 380; People ex rel. v. Londoner, 13 Colo. 303.
The importance of this suggestion will appear from a brief statement of the complaint. It is filed at the relation of The Union Pacific Railway Company, though signed by the district attorney, as well as by counsel for the company. It is verified by one of the private counsel, which is a circumstance to be remembered in the subsequent discussion. According to the allegations, sundry persons in 1886 organized a corporation called “ The Denver Railroad and Land Company.” Its objects are stated by quotations from the articles of incorporation. Thereafter divers changes were made, both in the name of the corporation, and the extent and character of the corporate purposes. In 1886 the company became The Denver Railroad, Land and Coal Company, and somewhat enlarged its corporate plans. In 1888 a much more elaborate change was effected by the filing of amended articles, which are conceded to have been in full conformity to the statutory requirements. By these new articles the companj'- became The Colorado Eastern Railway Company, and, according to its declared objects and purposes, it took the form of a substantial railroad corporation. Theretofore it had been but a short line, running from Denver a few miles out in the adjacent country to reach the coal fields and lands which had originally belonged to the organizers of the corporation. By the amendment of 1888, the railroad was to extend from the Union Depot in Denver to the eastern boundary line of the state, a distance of several hundred miles. The history of the capitalization of the company, the extent and character of its expenditures, the creation of its bonded indebtedness, and many other details attending its original organization *303 and subsequent development are set out at length in the bill. In the view we take of the case, no more exact or complete statement need be made. It is averred that the sole purpose of the original incorporation was to carry out the private business of the persons who organized it. After setting up the expenditure of the full capital stock in the construction of the original road, and the creation of a debt of $500,000, the pleading averred that the new corporation had made no provision for capital to construct the extension, and that it is without the means to carry out its contemplated improvements. The relator then proceeds to state that this defendant corporation, The Colorado Eastern Railway Company, has instituted two suits against it to condemn certain property belonging to The Union Pacific Railway Company, of the value of about $175,000, embracing lands indispensably necessary to the successful prosecution of the business of the company. The relator states these suits are pending in the federal courts, one in the supreme court of the United States, and the other in the circuit court for the district of Colorado. The attempted condemnation is said to be for private ends and speculative purposes, and not for the bona ficle uses of a corporation, organized for a legitimate purpose. The complaint winds up with a general prayer for dissolution, or an injunction to restrain the defendant company from exercising any corporate rights, except as to that portion of the road which was completed under the original charter or the first amendment thereto. It may very safely be said the cause of action rests on these allegations. The complaint is not fully stated, but adequately to the apprehension of the opinion. The complaint was demurred to and final judgment entered in favor of the defendant company, from which judgment the relator prosecutes error.
The relator relies principally on the averments concerning the capital stock of the company, and its financial condition ; its attempt to condemn lands which belonged to the relator, and a provision of our statute which is found in the laws of 1883, section 337. According to this statute, any railroad *304 company must within two years subsequent to the record of its articles begin the construction o£ its road and expend thereon twenty per cent of its capital stock within five years or its corporate organization and power shall cease. This statute was afterwards amended, but not in such a way as to affect any question involved in this proceeding. On these several matters a very elaborate argument has been constructed by counsel to maintain their contention that The Colorado Eastern Railway Company has failed to comply with the statutory mandates and should be subjected to the penalty of dissolution and to the destruction of its corporate life. We do not propose to discuss this question nor to determine the matters which counsel have united in presenting to the court. We do not hesitate to adopt this course, because the suit involves a franchise, and the relator can obtain a construction of the statute and a judgment which will be conclusive. If this consideration was not persuasive, we should adopt this course because in our judgment it is not a legitimate litigation which is prosecuted for the enforcement of public rights. According to our best judgment, it is a proceeding brought by The Union Pacific Railway Company against the defendant corporation to enforce private rights and redress private wrongs. This litigation is in our judgment wholly unnecessary to the protection of those rights or the redress of those grievances, and while we concede to the litigants the right to institute as many suits and to begin as many proceedings as may seem expedient or necessary to enforce their claims, we do not admit they may institute such proceedings in the name of the people for any other than public purposes. We confess the question was not raised by the defendant company, but the consideration is so entirely persuasive and satisfactory we unhesitatingly rest our conclusions on that proposition. We are therefore without the aid of argument on this question.
In our judgment, the only matter which we are called on to decide is the proper construction of chapter 27 of our code. We must ascertain what authority that chapter gives *305 relators to bring proceedings in the nature of quo warranto, to protect their private interests and to redress their private wrongs, or to bring them in the name of the people to right some public wrong and. ’prevent encroachment on the rights of the people. As we view it, the statute is in reality but an enactment of the general provisions of the common law with reference to proceedings by information by way of quo ivarranto. In some respects it enlarges the remedy and probable includes some classes of cases to which it was formerly inapplicable. It likewise undoubtedly opens the way to a much larger class of persons to institute proceedings for the redress of public wrongs. We need not attempt to enter on any elaborate analysis of the chapter, nor a statement by inclusion or exclusion of tbe cases or the parties in which or by whom such proceedings may be begun. The only inquiry we need to make respects the character of the present suit. By whom was it begun, and for what is it being prosecuted ? Evidently it was not begun b}r the district attorney, although his name is signed to the paper. He was doubtless a consenting official, and the complaint perhaps is not defective in this particular, though it is signed and verified by private counsel, and is prosecuted in this court by them alone. Passing by this apparent irregularity, we need only look at the substance of the complaint to ascertain its substantial character. The complaint discloses no wrong done to the people, nor any act or proceeding by The Colorado Eastern Railway Company detrimental to the public welfare, or likely to occasion harm to the people as contradistinguished from the private relator. The thing complained of is the attempted condemnation of lands belonging to The Union Pacific Railway Company. There is no other one act or thing charged which can be said to constitute an absolute wrong which calls for redress. In making this statement we do not intend to be understood as deciding how much capital stock The Colorado Eastern Railway Company must provide for and issue and sell to validate its acts under the amendment of 1888, nor what the company was bound to do with reference *306 to this increase. This whole matter is dismissed from consideration, because the bill charges nothing which tends to show harm likely to come to the people because of any misfeasance in this particular. There is no attempt to show acts of the defendant company which in the remotest manner tend to the prejudice of the public. The thing complained of is the attempted condemnation of the Union Pacific Company’s lands for terminal facilities. This is not a matter in which the public are interested. It only concerns The Union Pacific Railway Company. This a private wrong for which there is ample remedy obtainable in other suits and by different proceedings, and we are advised by some of the authorities which the plaintiff in error cites that the matter may be set up by way of defense in the condemnation proceedings. Matter of the B., W. & N. Ry. Co., 72 N. Y. 245.
Actions have been begun and are now pending to condemn the lands, and doubtless, in both of those suits, there will be a full adjudication of the claims of the parties. The present proceeding is wholly unnecessary to defend or protect their respective interests, nor does it seem to us to be a legitimate suit to compass that end.
• In addition, it seems to be pretty generally held that these proceedings are always quasi public, prosecuted by law officers of the people, and ouly available to protect public interests as contradistinguished from private rights. As a rule, wherever it is discovered proceedings are brought for the latter purpose, they are never entertained, but the party is remitted to an action at law or suit in equity to redress his injuries. Beach on Private Corp., vol. 1, sec. 58, et seq.; Commonwealth v. Allegheny Bridge Co., 20 Pa. St. 185; Murphy v. Farmers Bank of Schuylkill City, 20 Pa. St. 415; Commonwealth ex rel. Banning v. P., G. & N. Ry. Co., 20 Pa. St. 518.
This general doctrine is supported by a great many cases. There seems to be no dissent from the general position that in order to support an action by the people for the redress of a wrong, that wrong must appear to have been done to the *307 people. Waterman on Corp., vol. 2, sec. 383; Leslie v. Lorillard, 110 N. Y. 519; Thompson v. The People, 23 Wend. 537; State ex rel. v. Minn. Thresher Mfg. Co., 40 Minn. 213; People v. The North River Sugar Refining Co., 121 N. Y. 582.
We are unable to find among the decisions of the supreme court any direct adjudication or construction of this statute. We find in the cases cited some very clear and satisfactory definitions of a franchise, and we find an intimation that the right to institute a proceeding of this sorb by a private relator is exceedingly doubtful, although jurisdiction was en-. tertained in another, but in neither was the question exactly determined. Londoner v. The People ex rel. Barton, 15 Colo. 246; People ex rel. Bernard v. Cheeseman, 7 Colo. 376.
Notwithstanding this fact, we are very clearly of the opinion the statute was not intended to give a private person the light to question the corporate existence of another, in order to protect his own rights or redress his own wrongs, unless it may be in that class of cases where the title to an office is involved, or some similar question is presented. If the law officer should refuse, we do not doubt the private relator could proceed and file an information to remedy a public wrong. In the latter case, however, it must appear that the object aimed at is a public one, and is the protection of the interests and the maintenance of the welfare of the people. The present proceeding has no such object in view. It was begun by The Union Pacific Railway Company to defend their title to property which, in their judgment, was jeopardized by the proceedings begun by the defendant corporation. It is without a solitary public feature, and must be taken to be purely a private suit, brought by private parties to accomplish their private ends. If we are correct in this,.the proceeding as begun was not maintainable, nor did the complaint state facts which would justify a judgment against the defendant company.
We therefore agree with the trial court and with its judgment upholding the demurrer to the complaint. It will be affirmed.

Affirmed.