## MANTON v. SOUTH SHORE TRACTION CO.

(Supreme Court, Special Term, Suffolk County. May 13, 1907.)

1. MUNICIPAL CORPORATIONS—GRANT OF RIGHT TO USE STREET—FORFEITURE—WAIVER.

Where the authorities of a town consented to the building of a railroad upon the streets thereof, on condition that the consent should not be operative until the road should give a bond indemnifying the town against all damages arising from the construction of the road, and on condition that one track should be in operation within two years and that an acceptance of the consent should be filed within a specified time, and there was due acceptance, but the road failed to begin construction work or to give the bond within the required two years, but upon application the authorities waived the defaults and extended the time, and the road was not in default under the amended consent, the owner of property abutting on one of the streets involved could not enjoin the construction of the road on the ground that the default could not be waived.

2. INJUNCTION—ACTION—BURDEN OF PROOF.

Plaintiff having claimed that the consent should have been on condition that the provisions of Railroad Law, Laws 1890, p. 1109, c. 565, § 92, should be complied with, the burden was upon him to point out those provisions of the law claimed to have been omitted.

Suit by Mark F. Manton against the South Shore Traction Company to enjoin the construction of a railway in certain streets of the town of Islip. Motion denied.

Collins, Wells & Hughes, for plaintiff.
Lexow, Mackellar & Wells, for defendant.

THOMAS, J. Prior to June 15, 1903, the South Shore Traction Company applied to the local authorities of the town of Islip, in the county of Suffolk, for consent to build a railway in part upon streets within such town, including Wheeler's Road, upon which plaintiff's land abuts. The local authorities "resolved that consent be, and the same is hereby, given pursuant to law to said South Shore Traction Company * * * to construct, maintain, and operate a * * * street surface railroad * * * upon" certain streets and routes enumerated, upon more than twenty separate conditions, three of which are as follows: (1) That this franchise and consent is not to be operative until the said traction company shall have executed and delivered to the said highway commissioners its acceptance in writing of the terms and conditions of this franchise in the form hereunto annexed and forming a part of this consent. That said acceptance be filed within 60 days from the date of this franchise, and "if the said traction company shall not execute, acknowledge, and deliver to the said highway commissioners its acceptance within sixty days, then this franchise is to be considered declined by said traction company, and to be null and void and of no effect, and the said highway commissioners * * * released from the obligation hereof." (2) "This franchise and consent not to be operative until the traction company shall give * * * a bond * * * in the penal sum of * * * $7,500 to indemnify * * * the said town of Islip and the highway commissioners thereof from any and all damages, costs, actions, claims, and demands arising from the construction, maintenance, and operation

of said railroad up to a period of thirty days after completion of said railway, and for the faithful execution and performance of the terms and conditions upon which this franchise is granted and the provisions of law applicable thereto.  *  *  *"  (3) "At least one track of the railroad line  *  *  *  shall be constructed and in operation across the town of Islip within two years from the date of the granting of this franchise; otherwise, all rights and privileges under this franchise shall cease and determine.   But in case of delay by injunction, legal processes, or any cause beyond the control of the said South Shore Traction Company, the period of such delay shall be added to the time named within which the said track is to be constructed."   Thereupon follow conditions relating to the location, construction, maintenance, and operation of the railway, indemnity against claims and losses, equipment of cars, etc.   The work of construction was not begun within two years from the date of the consent, nor was the bond given within that time; but there was due acceptance of the consent.   In April, 1907, upon an application filed in the previous October, the local authorities waived the defaults and fixed a time within which the bond should be given and the work begun and finished.   The defendant is not in default as to the amended consent and has expended a large sum in construction work.

The plaintiff seeks to enjoin the construction of the railway upon the grounds: (1) That the original consent was illegal, in that it did not observe section 92 of the railroad law (Laws 1890, p. 1109, c. 565) that "such consent must be upon the expressed condition that the provisions of this article pertinent thereto shall be complied with." (2) The local authorities could not waive the default.   (3) In November, 1906, the local authorities granted to the Suffolk Traction Company, not authorized by the railroad commissioners to construct and operate a railway, a franchise to construct a railway across the town of Islip and in part on some of the streets theretofore designated for the railway of the South Shore Traction Company.   The bond was intended to insure the due construction and operation of the railroad and the performance of its agreements, and was of no value until the work was begun; and it is considered that, in the absence of a precise limitation, the bond might be filed at any time before the grantee began to exercise the right.   If the power to begin work ceased or was in abeyance, the ability to give the bond was similarly affected.   If the power to begin work was restored, the grantee would be re-enabled to give the bond.   It is observable that by the words of the consent the consent was "to be null and void" unless it was accepted within the time limited.   There is no provision for cesser of the franchise if the bond be not given.   Conditions for a bond or payment of money attached to corporate grants have not been regarded as creating conditions precedent, but rather conditions subsequent.   Matter of Kings County Elevated Railroad Company, 105 N. Y. 97, 13 N. E. 18.   Enfield Toll Bridge Co. v. Conn. River Co., 7 Conn. 28-52; Hughesdale Mfg. Co. v. Vanner, 12 R. I. 491; Schenectady, etc., Co. v. Thatcher, 11 N. Y. 107; Minor v. Mechanics' Bank, 1 Pet. (U. S.) 46, 7 L. Ed. 47; Spartanburg, etc., R. Co. v. Ezell, 14 S. C. 281; Mitchell v. Rome R. R. Co., 17 Ga. 574.

In the present instance the consent states that the "franchise and consent is not to be operative" until the bond shall have been given. This means that the franchise shall not be exercised—that the consent shall not be efficacious to authorize the company to proceed—until the bond shall have been given. But the instrument must be read as a whole. The opening words are: "Resolved, that consent be and the same is hereby given." The words "hereby created" or "hereby granted," in such connection, impart a present grant, and conditions attached are construed as subsequent. Rogan v. Walker, 1 Wis. 527; Schulenberg v. Harriman, 21 Wall. (U. S.) 44–60, 22 L. Ed. 551; Leavenworth, etc., v. U. S., 92 U. S. 741, 23 L. Ed. 634; Finlay v. King's Lessee, 3 Pet. (U. S.) 376, 377, 7 L. Ed. 701. Moreover, the condition that one track of the railroad should be constructed through the town within two years was clearly a condition subsequent. Nicoll v. N. Y. & R. Co., 12 N. Y. 121; Schulenberg v. Harriman, 21 Wall. (U. S.) 60, 22 L. Ed. 551; Cheraw R. R. Co. v. White, 14 S. C. 51–63; Duryee v. Mayor, 96 N. Y. 493; Howard v. Turner, 6 Greenl. (Me.) 106; Matter of Kings Co. Elevated R. Co., 105 N. Y. 97, 13 N. E. 18; and cases cited above. Such condition is necessarily subsequent, as the work could not be begun until the franchise vested in title and enjoyment. Passing the question whether the condition for the bond was subsequent, and keeping in mind that it could be given at any time before the right to build the railway ceased, the question comes to this: Did the failure to build the road within two years deprive the local authorities of the right to waive the default? The local authorities, having acquired jurisdiction of the matter, made the terms, and with the other party's consent could unmake or make over the terms. That this could have been done before default does not seem to be questioned seriously.

But it is urged that after default the right ceased and the local authorities lost control of their own contract. It is urged by the plaintiff that the language in the consent would ipso facto effect a forfeiture, and that this may be asserted by any person whose property would be affected by an exercise of the franchise. It was so held in Re Brooklyn, Winfield & Newtown Ry. Co., 72 N. Y. 245; Id., 75 N. Y. 335; Brooklyn Steam Transit Co. v. City of Brooklyn, 78 N. Y. 524. The isolation of these decisions in the great law of conditions is emphasized by application of B. E. R. R. Co., 125 N. Y. 434, 26 N. E. 474, Matter of N. Y. & L. I. Bridge Co., 148 N. Y. 541–547, 42 N. E. 1088, and Dusenbery v. N. Y. Westchester & Conn. Traction Co., 46 App. Div. 267, 61 N. Y. Supp. 420, the earlier cases seem to be followed with some modification. But has any court ever held that such condition was self-executing, as against the grantor's wish expressed in a solemn waiver of the default? Such a holding would violate the essential law that a condition is for the benefit of a person in whose behalf it is made (Pratt v. N. Y., etc., Co., 55 N. Y. 505, 14 Am. Rep. 304), and that such person has the election whether he will waive or enforce it (Stuyvesant v. Davis, 9 Paige [N. Y.] 431; Beach v. Nixon, 9 N. Y. 35). A grant on condition never ceases, so as to preclude such party from continuing it, although there may be provision that the grant should cease or become void upon nonper-

formance. Ludlow v. N. Y. etc., 12 Barb. 440; Clark v. Jones, 1 Denio, 517, 43 Am. Dec. 706; Canfield v. Westcott, 5 Cow. 270.

The plaintiff's contention is inconsistent with the power of the state, not only to waive the default, but also to enforce performance upon the corporation that has obtained the status of a public agent. N. Y. & N. H. R. R. Co. v. Schuyler, 34 N. Y. 30; People v. Albany & Vermont R. R. Co., 24 N. Y. 261–269, 82 Am. Dec. 295; People v. N. Y. C. & H. R. Co., 28 Hun, 543–549. To the power conferred by the grant is coupled the duty of performing it, and shall it be held that the usual words that in ordinary grants do not operate against the grantor shall strip the state or municipality of power to enforce the obligation? The modern doctrine, that a grant upon condition subsequent ceases at the instance of a stranger, has not yet been extended to a holding that the contract falls, even as against the grantor who wishes to continue or to enforce it, and for that purpose has waived entry, condoned the default, extended the time of performance, and received a bond to secure performance. Pursuant to these views, it is considered that the local authorities had power to waive the default.

It is further urged by the plaintiff that the local authorities have granted to another company the right to use some of the streets enumerated in the former consent. If, after the default, the local authorities made a valid grant to a corporation able to take the rights previously given upon condition, such act would be evidence of reentry, if the two grants could not co-exist. But at this hearing it does not appear satisfactorily that the two grants are inconsistent, and there is grave doubt whether the grantor had power to take. If the question has merit, it should be shown on the trial.

There remains the objection that the consent omitted to state that it was "upon the expressed condition that the provisions of this article pertinent thereto shall be complied with." But what provision of article 4 pertinent to the consent is not included in the consent by a suitable condition? If there is any omission in that regard, the plaintiff should point to it, which he has not done. If the consent covers the pertinent matters by detailed enumeration, it complies with the statute. The court does not assume the duty of searching the article to discover by minute scrutiny the omitted subject. It seems quite within the power of the local authorities to amend the consent, if there be occasion, and thereupon, if the grantee and surety in the bond consent to the amended consent, or, as regards the surety, a new bond be given, the amended consent would be beyond criticism.

The motion is denied, with $10 costs.